THE PEOPLE *ex rel.* W. D. Parker

*v.*

OWEN BURNS *et al.*

*Opinion filed October 24, 1904—Rehearing denied December 7, 1904.*

I. QUO WARRANTO—*defendants must disclaim or justify.* Defendants to an information in the nature of *quo warranto* to oust them from the office of drainage commissioners, upon the ground that the district was not legally organized, must either disclaim or justify, and if they justify they must show on the face of their plea that they have title to the office. .

2. SAME—*when plea of justification is not demurrable.* A plea of justification by drainage commissioners which alleges the taking of the necessary steps for the legal organization of the drainage district is not demurrable because it states that the commissioners, upon the hearing, found the allegations in the plea to be true.

3. SAME—*public not estopped to file information by conduct of relator.* Estoppel against the public to maintain an information filed by the State's attorney attacking the organization of a drainage district cannot be predicated upon the individual conduct of the relator, where there is nothing to show that the information was filed for his exclusive benefit.

WRIT OF ERROR to the Circuit Court of Lee county; the Hon. R. S. FARRAND, Judge, presiding.

This is a writ of error to the circuit court of Lee county, to reverse the judgment of that court in a *quo warranto* proceeding by plaintiff in error, against defendants in error, to oust the latter from the office of drainage commissioners. The information alleges that the defendants usurped and were wrongfully and without lawful authority exercising the rights of the offices, powers and franchise of drainage commissioners of district No. 2 of the town of Harmon, in said Lee county. The grounds of the petition are, that the drainage district was not legally organized because the original petition filed with the town clerk was not signed by a majority of the adult persons owning land in said proposed district who were the owners of more than one-third of the

land in the proposed district, or by the owners of a major part of the land and who constitute one-third or more of the owners of the land in said proposed district, wherefore the district was not legally organized, and the defendants hold and execute, without warrant of law, the office of drainage commissioners. A demurrer was filed to the information by the respondents and overruled, whereupon they filed seven pleas, to each of which the relator demurred, and the respondents moved to carry the demurrer back to the information, but that motion was overruled and the demurrer to the pleas, and each of them, sustained. Five additional pleas were then filed and the sixth and seventh original pleas amended. The relator moved to strike the additional pleas from the files, which was denied. He also demurred to the sixth and seventh amended pleas, which demurrer being overruled he elected to abide by the demurrer. The respondents then moved the court for judgment on said pleas and that the writ of *quo warranto* be quashed and that relator pay the costs of the suit, which latter motion was sustained and judgment entered accordingly. To that judgment relator excepted and sued out this writ of error.

C. H. WOOSTER, State's Attorney, (J. E. LEWIS, and H. A. BROOKS, of counsel,) for plaintiff in error.

F. E. ANDREWS, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The drainage district in question was organized, or attempted to be organized, under section 11 of chapter 42 of our statutes. (Hurd's Stat. 1903, p. 740.) It is a well settled rule of practice applicable to this action, that defendants must either disclaim the office which they are charged with usurping or they must justify, and that if they justify they must show on the face of their plea that they have title to the office. The seventh amended plea, to which relator's demurrer was overruled, is a plea of justification, and if the

ruling of the court upon the demurrer thereto was proper, its judgment must be affirmed. It is true that no disposition seems to have been made of the five additional pleas; but no question is here made as to that fact, and, as above stated, the judgment was upon the demurrer to the sixth and seventh pleas.

Counsel for plaintiff in error say: "The real question presented by the record is, are the pleas of the defendants in error good on demurrer?" etc. In the view we take of that question it will be unnecessary to consider or decide the many other points raised in the argument of counsel for the defendants in error, our conclusion being that the demurrer to the seventh plea was properly overruled. Counsel for the relator assume that that plea did not allege that the petition to the commissioners for the formation of the drainage district was signed by a majority in number of the adult owners of lands lying in the proposed district, and that they owned, in the aggregate, more than one-third of the lands lying therein, or by the owners of the major part of the lands and who constitute one-third or more of the owners of lands therein. Their construction of that plea is, that those facts are only alleged to have been found by the commissioners and do not appear by direct allegation, and they say the plea simply recites "the finding of the commissioners that the petition contained the signatures of a majority of the adult persons owning lands in the proposed district," etc. We do not agree with this construction of the plea. As appears from the abstract filed by plaintiff in error himself, (there being an additional abstract by the defendants in error,) "amended plea No. 7 alleges that upon October 11, 1898, there was presented to and filed with the town clerk of the town of Harmon, in said county, a petition addressed to the drainage commissioners of said town, signed by John Gorman and other land owners in said proposed district, representing, among other things, that they desired that a drainage district might be organized, embracing the lands therein de-

scribed, for the purpose of constructing, repairing and maintaining drains, embankments and grades within said district for agricultural and sanitary purposes, by special assessment upon the property benefited thereby; that the lands lying within the boundaries of said proposed district required a combined system of drainage and protection from wash and overflow, and that said petition was signed by a majority in number of the adult owners of lands lying in said proposed district, and that they are the owners, in the aggregate, of more than one-third of the lands lying in the proposed district, and by the owners of a major part of the lands, and who constitute one-third, or more than one-third, of the owners of the lands in the proposed district, and praying that the said drainage commissioners would proceed and cause said drainage district to be organized." The abstract also shows that the plea set out the various steps taken by the land owners and the commissioners, as provided by the statute, in the organization of the district. It will thus be seen the plea does allege the petition was signed by the requisite number of land owners, as required by section 11 of the statute. It further alleges that on October 11, 1898, the town clerk notified the commissioners of the filing of said petition, posted notices, etc., as required by section 12, and that a meeting of the commissioners would be held at his office on the 20th day of October following, for the purpose of organizing the district. It then recites that on the latter date, (October 20,) in pursuance of said notice, the commissioners met at the town clerk's office for the purpose of considering the petition and for a hearing of the matters involved therein; "that the town clerk laid before the commissioners the petition, which was alleged to be signed by the required number of land owners, as provided by law," and then follows the allegation: "And the said commissioners did examine and consider the papers laid before them and did hear the evidence of the witnesses produced before them and the affidavit of two of the petitioners who were

credible persons, and became satisfied in the premises that all the statements in said petition were true, did so find and did find in favor of said petition, and did reduce their finding to writing, and did sign and seal the same and file their said finding with the said town clerk, with the other papers in the case." In other words, the plea, on its face, alleges that the petition was signed by the required number of land owners in the proposed district, and that upon the hearing, as provided in section 13 of the act, the commissioners found that allegation to be true.

We are unable to perceive upon what theory the objection to the seventh plea can be sustained and it held insufficient as a plea of justification. It may be conceded that if the plea showed nothing but the finding of the commissioners as to the number of land owners who signed the petition it would be bad on demurrer as a plea of justification, because it would then be simply a finding unsupported by allegation, in which case the authorities cited by counsel in their argument would be in point; but, as before stated, this plea is not subject to that objection, and we think the court below properly overruled the demurrer thereto.

The sixth plea sets out the various steps in the organization of the district as in the seventh, and then alleges that the relator, W. D. Parker, was present at some of the meetings held by the drainage commissioners and acquiesced in their proceedings to such an extent that he is estopped from maintaining this action questioning the legality of the organization of the district, the theory of the plea being, that this proceeding is not for the benefit of the public but for that of the relator, individually. The information is in the name of the People of the State of Illinois, filed by the State's attorney, on the relation, etc. The public at large is therefore, upon the face of the information, interested in the drainage district, it being a public corporation. (*Payson* v. *People,* 175 Ill. 267.) The Attorney General or State's attorney may file an information on behalf of the People where the inter-

ests of the public are involved, and lapse of time constitutes no bar to such a proceeding. The doctrine of estoppel does not apply to a matter in the nature of a public right, and the State is not embraced within the Statute of Limitations unless specially named, and, by analogy, does not fall within the doctrine of estoppel. (*People* v. *Gary,* 196 Ill. 310.) In the organization of the district in question the public was interested, and could not be estopped from filing an information to question the legality of its organization merely because of the individual conduct of the relator, and, as we have seen, there is nothing in the record to show that the information as filed was for the private and exclusive benefit of the relator.

We are of the opinion, therefore, that the demurrer to the sixth amended plea should have been sustained. The seventh plea, however, as a plea of justification, being sufficient, the overruling of the demurrer to the sixth worked no injury to the relator.

The judgment of the circuit court must therefore be affirmed.

*Judgment affirmed.*